## IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| **BENEDICT EMESOWUM,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 1:20-cv-113** |
| ) | |
| **ARLINGTON COUNTY,** *et al.,* ) | |
| **Defendants.** ) | |

### <u>MEMORANDUM OPINION</u>

Plaintiff, proceeding *pro se*, has filed an amended complaint in this § 1983 suit against Arlington County and five Arlington County police officers, alleging violations of plaintiff's constitutional rights pursuant to the Fourth, Fifth, Eighth, and Fourteenth Amendments. Plaintiff's allegations arise out of an incident that occurred on March 9, 2018 in which Arlington County police officers allegedly placed plaintiff in handcuffs for approximately forty minutes in a mall parking lot. At issue is defendants' motion to dismiss the amended complaint for failure to state a claim.

The matter has been fully briefed and thus is ripe for disposition. Oral argument is dispensed with as the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid in the decisional process.[1] For the reasons that follow, defendants' motion to dismiss is granted in part and denied in part.

### I.

It is appropriate first to recount the procedural history of this case. On February 3, 2020, plaintiff, proceeding *pro se*, filed his original § 1983 complaint against Arlington Count and five

---

[1] Rule 78, Fed. R. Civ. P., provides that a court may determine motions on the briefs without oral hearings. The hearing on these motions scheduled for June 12, 2020 is therefore cancelled.

Arlington County police officers in their official capacity, alleging violations of plaintiff's constitutional rights pursuant to the Fourth, Eighth, and Fourteenth Amendments. On March 2, 2020, defendants filed a motion to dismiss for failure to state a claim. By Order dated April 7, 2020, plaintiff's original complaint was dismissed without prejudice. *See Emesowum v. Arlington County, et al.*, No. 20-cv-113, at Dkt. 22 (E.D. Va. Apr. 7, 2020). Plaintiff's original complaint was dismissed without prejudice because the original complaint failed to allege sufficient facts that a policy or custom of Arlington County caused plaintiff's injuries, as required to state a claim pursuant to 42 U.S.C. § 1983 in suits against municipalities and in official-capacity suits against local police officers. *See id.* at 3, 6.

On April 28, 2020, plaintiff filed an amended complaint against the same defendants alleging similar claims under § 1983. In addition, the amended complaint sues the defendant police officers in their individual capacities and includes further factual allegations. Specifically, the amended complaint alleges that defendants are liable to plaintiff pursuant to § 1983 because of defendants' (1) malicious prosecution of plaintiff; (2) false arrest and torture of plaintiff; and (3) reckless destruction of plaintiff's property. On May 8, 2020, defendants filed the instant motion to dismiss the amended complaint for failure to state a claim. Defendants' motion to dismiss makes the following arguments:

> (i) plaintiff's Fifth and Fourteenth Amendment Due Process claims for unlawful arrest and any claim under the Eighth Amendment fail as a matter of law;
>
> (ii) plaintiff's official capacity claims do not allege any policy or custom of Arlington County and thus must be dismissed for failure to state a claim;
>
> (iii) plaintiff's Fourteenth Amendment Equal Protection claim should be dismissed because the amended complaint fails to show that plaintiff was intentionally treated differently from a similarly situated individual and that there was no rational basis for the difference in treatment;

(iv) plaintiff's individual capacity suits against defendants Kang, Mindell, Butzer, and Buchofer should be dismissed for failure to allege any facts that those defendants were personally involved in the alleged deprivation of plaintiff's rights; and

(v) plaintiff's Fourth and Fifth Amendment claims against defendant Buxton in her individual capacity should be dismissed for failure to state a claim and because Buxton is protected by qualified immunity.

For the reasons that follow, defendants' motion to dismiss is granted in part and denied in part.

## II.

As required by Rule 12(b)(6), Fed. R. Civ. P., plaintiff's well-pleaded allegations of fact are assumed to be true at this stage and all such alleged facts are viewed in the light most favorable to plaintiff. *See Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The amended complaint contains the following relevant factual allegations:

- On March 9, 2018, at approximately 6:40 p.m., an accident occurred between plaintiff's vehicle and a vehicle belonging to Dylan Anderson in a private parking lot located at 1400 Joyce St., Arlington, VA 22202. The amended complaint alleges that Anderson blocked plaintiff's vehicle from leaving the private drop-off area in front of the apartment complex, that Anderson refused to move his car when plaintiff requested Anderson to do so, and that when plaintiff attempted to drive away, Anderson "proceeded to move forward to block [p]laintiff's exit [which] led to a scratching accident."[2]

- After the accident, plaintiff immediately called 911 and was allegedly informed that the police would not come to the scene because it was a minor accident with no injuries. Anderson refused to provide plaintiff with his personal information. As a result, plaintiff attempted to document the incident by taking photos and videos of Anderson and Anderson's vehicle.

- Plaintiff then left the apartment complex and drove to a mall that "was a quarter mile from the location of the accident."[3] The amended complaint alleges that Anderson followed plaintiff to the mall. Plaintiff parked his vehicle with his flashers on, and Anderson parked right behind plaintiff. The amended complaint alleges that, unbeknownst to plaintiff, Anderson called the police and falsely reported that plaintiff was fleeing the scene of an accident.

---

[2] *See* Amended Complaint, Dkt. 25, at ¶ 11.

[3] *Id.* at ¶¶ 19, 21.

3

- Plaintiff went into the mall and returned to the mall parking lot about 5-10 minutes after leaving his car. When plaintiff returned to the parking lot, he was carrying hundreds of dollars' worth of food that he had purchased.

- As plaintiff was returning to his vehicle with the purchased food, he was arrested by defendant Buxton and a male officer. The amended complaint alleges that the officers (i) did not ask who plaintiff was, if he was the driver of the vehicle, or for his version of what happened and (ii) refused to inform plaintiff why he was under arrest even after plaintiff asked. The amended complaint alleges that the officers ordered plaintiff to drop his food and immediately placed plaintiff in handcuffs.

- The amended complaint alleges that the police moved plaintiff to the adjacent sidewalk in handcuffs, and the five police officers then at the scene detained and questioned plaintiff for approximately forty minutes. Plaintiff was wearing only a t-shirt and an open jacket because he was in the process of removing his jacket in order to drive when he was placed in handcuffs. Because it was a cold night, plaintiff requested that the officers close his jacket or place him in the police car. The amended complaint alleges that the police refused to close plaintiff's jacket, to put him in a police vehicle, or to take him to jail.

- While detained, plaintiff gave the police officers his phone and showed the police officers the videos that plaintiff had taken at the scene of the car accident. Upon plaintiff's request, the police officers also verified that plaintiff's phone number had contacted 911, but the police officers allegedly claimed that plaintiff could not have been told that no officer was going to be dispatched to the scene of the car accident.

- After approximately forty minutes, the police officers released plaintiff from the handcuffs and wrote plaintiff a summons for reckless driving, in violation of Va. Code § 46.2-852.

- The amended complaint alleges that there was no probable cause to arrest plaintiff because (i) the car accident/incident between plaintiff and Anderson occurred on private property; (ii) an accident is not grounds for an arrest; (iii) a mere conclusory accusation is not grounds for an arrest; (iv) plaintiff's vehicle was conspicuously and properly parked next to the accuser's vehicle; and (v) no inquiry was made to hear plaintiff's side of any potential incident before arresting him.

- The amended complaint alleges that the police officers treated plaintiff unfairly and did not provide plaintiff the same rights and privileges as Anderson because of plaintiff's race. Plaintiff is African-American. Anderson is Caucasian.

- The amended complaint alleges that plaintiff was wrongfully arrested, that plaintiff was tortured by being exposed to freezing temperatures, and that all of the food plaintiff purchased was damaged from being left out in the cold.

- The amended complaint further alleges that plaintiff was maliciously prosecuted. The reckless driving charge, for which defendant Buxton wrote plaintiff a summons as a result of the March 9, 2018 incident, was later amended to a charge of driving two abreast in a single lane, in violation of Va. Code § 46.2-857. After a bench trial, plaintiff was found not guilty of violating Va. Code § 46.2-857.

- The amended complaint further alleges that Arlington County has a systemic practice of violating the rights of minorities by conducting false arrests and malicious prosecutions

without questioning or investigating the accused. Specifically, the amended complaint cites four prior cases: *Zemedagegehu v. Arthur*, No. 1:15-cv-57; *Vasquez v. Bombard*, No. 1:08-cv-843; *Heffernan v. Arlington County*, No. 1:11-cv-1354; *Touati v. Maloney*, No. 1:17-cv-247.

- The amended complaint brings three specific claims for relief pursuant to 42 U.S.C. § 1983: (1) malicious prosecution; (2) false arrest and torture; and (3) reckless destruction of property.

- Plaintiff seeks (i) $100,000 in money damages for the injuries and sickness suffered, the goods damaged, and the lost income due to defense from malicious prosecution; (ii) punitive damages against defendants; and (iii) reasonable expenses incurred in litigation, including reasonable attorney fees and expert fees.

## III.

The well-settled motion to dismiss standard applicable here does not require extensive elaboration. As the Supreme Court has made clear, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Importantly, in making this determination the district court must "accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff]." *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015). But the district court is not bound to "accept as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Instead, the complaint must allege facts that, if true, plausibly satisfy each element of the claims for which relief is sought. Accordingly, the motion to dismiss must be granted if the amended complaint does not allege a sufficient factual basis to create a plausible inference that plaintiff is entitled to the relief sought.

# IV.

Plaintiff's amended complaint alleges various claims under 42 U.S.C. § 1983. Section 1983 imposes civil liability on one who, under color of State law, deprives any citizen of the United States or other person under the jurisdiction thereof of any right secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983. In this respect, § 1983 "is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)). Thus, the first step in any § 1983 claim is to pinpoint the specific right that is alleged to have been infringed. *Id.* (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)).

Here, plaintiff contends that defendants are liable for (1) malicious prosecution, (2) false arrest and torture, and (3) reckless destruction of property because defendants (i) handcuffed plaintiff for approximately forty minutes on March 9, 2018, (ii) kept plaintiff handcuffed outside when it was cold, (iii) damaged the food plaintiff had just purchased by leaving it out in the cold while plaintiff was handcuffed, and (iv) proceeded to prosecute plaintiff for traffic infractions even though plaintiff was not guilty of any infraction. Plaintiff claims that defendants' actions violated plaintiff's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments.

Inasmuch as plaintiff's § 1983 claims are premised on the Fourteenth Amendment's Due Process Clause[4]—whether procedural or substantive due process—the claims must be dismissed

---

[4] The amended complaint asserts a violation of the Fifth Amendment Due Process Clause. *See* Amended Complaint, Dkt. 25, at ¶ 66. But the Fifth Amendment Due Process Clause applies only to federal actors, whereas the Fourteenth Amendment Due Process Clause applies to state and local actors. *See United States v. Al-Hamdi*, 356 F.3d 564, 573 n.11 (4th Cir. 2004). Here, the amended complaint alleges due process violations by local police officers. Accordingly, the allegations in the amended complaint are construed liberally to assert claims under the Fourteenth Amendment Due Process Clause, not the Fifth Amendment Due Process Clause. In any event, the Supreme Court teaches that the standards governing the analysis of due process claims under the Fourteenth Amendment apply with equal force to due process claims raised under the Fifth Amendment. *See id.*

because as the Supreme Court has made clear, allegations of false arrest, malicious prosecution, and unlawful seizure are all governed not by the procedural and due process components of the Fourteenth Amendment, but by the Fourth Amendment (incorporated in the Fourteenth Amendment). *See Graham v. Connor*, 490 U.S. 386, 388 (1989). In this respect, the Fourth Amendment "provides an explicit textual source of constitutional protection against [unreasonable seizures and arrests]"[5] and "define[s] the 'process that is due' for seizures of persons or property in criminal cases."[6] Consequently, the Fourth Amendment, and not the more generalized notion of due process in the Fourteenth Amendment, provides the actionable ground for relief where, as here, a police officer is alleged to have arrested plaintiff falsely, maliciously prosecuted plaintiff, and unlawfully seized plaintiff and plaintiff's property.[7] Accordingly, any of plaintiff's § 1983 claims premised on the Fifth Amendment Due Process Clause and the Fourteenth Amendment Due Process Clause must be dismissed with prejudice.

For the same reasons, any of plaintiff's § 1983 claims premised on the Eighth Amendment must be dismissed with prejudice. Plaintiff's original complaint alleged a claim under the Eighth Amendment's Cruel and Unusual Punishment Clause. Construed liberally, plaintiff's amended complaint also attempts to state an Eighth Amendment claim for false arrest and torture, alleging that the police officer's decision to leave plaintiff handcuffed in the cold for forty minutes amounted to torture. In this respect, the Supreme Court has made clear that claims for the use of excessive force in effectuating an arrest or other seizure are governed by the Fourth Amendment; claims of excessive force against a convicted prisoner are governed by the Eighth Amendment;

---

[5] *Graham v. Connor*, 490 U.S. 386, 395 (1989).

[6] *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975).

[7] *See Taylor v. Waters*, 81 F.3d 429, 435–36 (4th Cir. 1996) (holding that a defendant does not have a substantive due process liberty interest in avoiding prosecution upon less than probable cause).

and claims of post-arrest excessive force against an arrestee or pre-trial detainee are governed by the Fourteenth Amendment Due Process Clause. *See Graham v. Connor*, 490 U.S. 386, 395 & n.10 (1989); *Sawyer v. Asbury*, 537 F. App'x 283, 290 (4th Cir. 2013). Where, as here, the allegations of excessive force occurred "during the course of an arrest, investigatory stop, [or] other 'seizure' of a person," the Fourth Amendment governs the cause of action. *Riley v. Dorton*, 115 F.3d 1159, 1161 (4th Cir. 1997), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010). Accordingly, any of plaintiff's § 1983 claims premised on the Eighth Amendment must be dismissed with prejudice.

Plaintiff also alleges a claim for reckless destruction of property in violation of the Fifth Amendment. In this respect, the Fifth Amendment Takings Clause provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V.[8] It is well-settled that the Fifth Amendment Takings Clause is not implicated when the government exercises its police power. *See Mugler v. Kansas*, 123 U.S. 623 (1887). When determining whether government action constitutes an exercise of the police power, the relevant inquiry is the character of the government's action in light of the particular facts of the case. *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).

Here, the amended complaint does not allege that plaintiff's property was seized for public use nor that it was seized through any governmental power of eminent domain. Instead, the amended complaint alleges plaintiff's food was seized when plaintiff was seized as part of law enforcement's investigation of a call-for-service related to a motor vehicle accident. Thus, any damage to the food plaintiff purchased as a result of the alleged forty-minute seizure was

---

[8] The Fifth Amendment Takings Clause has been incorporated to apply to the states through the Fourteenth Amendment. *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017).

"merely…incidental or consequential" damage to private property in the course of law enforcement's exercise of its police power, which does not amount to a government taking under the Fifth Amendment. *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355-56 (Fed. Cir. 2003).[9] Accordingly, plaintiff's § 1983 claim against all defendants for reckless destruction of property in violation of the Fifth Amendment must be dismissed with prejudice.

In sum, plaintiff's § 1983 claims for (1) malicious prosecution and (2) false arrest and torture are based on alleged violations of plaintiff's Fourth Amendment rights because all of plaintiff's factual allegations arise out of the alleged unlawful seizure of plaintiff during the March 9, 2018 incident. Further, for the reasons stated *supra*, plaintiff's claims that defendants violated plaintiff's Fifth, Eighth, and Fourteenth Amendment Due Process rights must be dismissed with prejudice.

## V.

After identifying the Fourth Amendment as the constitutional right at issue in plaintiff's malicious prosecution and false arrest and torture claims, it is now appropriate to address plaintiff's § 1983 claims against Arlington County and against the police officers in their official capacities. For the reasons that follow, plaintiff's § 1983 claims against Arlington County and against the police officers in their official capacities must be dismissed with prejudice.

The official capacity claims against the five Arlington County police officers are duplicative of plaintiff's claims against Arlington County and must be dismissed on that basis alone.[10] *See Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 307 n.13 (4th Cir. 2006)

---

[9] *See also AmeriSource Corp. v. United States*, 525 F.3d 1149, 1154 (Fed. Cir. 2008) ("[S]o long as the government's exercise of authority was pursuant to some power other than eminent domain, then the plaintiff has failed to state a claim for compensation under the Fifth Amendment."); *Lech v. Jackson*, 791 F. App'x 711, 719 (10th Cir. 2019) (same).

[10] Plaintiff was previously informed of this determination in the April 7, 2020 Order that dismissed plaintiff's

(citing *Love–Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004)). Arlington County is the appropriate defendant with respect to plaintiff's official capacity claims because official capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Accordingly, the official capacity claims against the five Arlington County police officers are dismissed with prejudice.

With respect to plaintiff's § 1983 claims against Arlington County, it is well-settled that municipalities and other local government units can be sued under § 1983 "when the execution of a government's policy or custom…inflicts the [plaintiff's] injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).[11] Thus, a viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights. *See, e.g.*, *Bd. of Comm'rs of Bryan Cty., v. Brown*, 520 U.S. 397, 403 (1997); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). In other words, a municipality is liable when a "policy or custom" is "fairly attributable to the municipality as its 'own,' and is…the 'moving force' behind the particular constitutional violation." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987) (internal citations omitted).

In this respect, the amended complaint alleges that Arlington County has a policy or custom of violating the civil rights of minorities through "false arrests and malicious prosecution[s] without questioning or investigating the accused" and cites the names of four prior federal lawsuits in support of its allegations.[12] Defendants, for their part, argue that none of the cases cited in the

---

original complaint without prejudice. *See Emesowum v. Arlington County, et al.*, No. 20-cv-113, Dkt. 22, at 5 (E.D. Va. Apr. 7, 2020).

[11] As noted in the April 7, 2020 Order that dismissed plaintiff's original complaint without prejudice, "municipalities and other local government units cannot be sued under § 1983 'for an injury inflicted solely by its employees or agents'" under a respondeat superior theory. *Emesowum v. Arlington County, et al.*, No. 20-cv-113, Dkt. 22, at 4 (E.D. Va. Apr. 7, 2020) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

[12] *See* Amended Complaint, Dkt. 25, at ¶ 61. The four cases cited in the amended complaint are: *Zemedagegehu v.*

amended complaint support the allegation that Arlington County has a policy or custom of violating the civil rights of minorities through false arrests and malicious prosecutions.

To analyze whether these four cases provide a plausible basis that Arlington County has a policy or custom that violated the constitutional rights of minorities, it is important to focus on the specific constitutional violation alleged in the amended complaint. In this respect, the amended complaint alleges that the Arlington County police officers' decision to place plaintiff in handcuffs while investigating a traffic infraction violated plaintiff's constitutional rights under the Fourth Amendment. Because the four cases that plaintiff cites are factually inapposite to the situation alleged here, namely none of the cases deal with traffic infractions or police responses to calls-for-service, and because each of those cases was dismissed at the threshold, the amended complaint fails to state sufficient factual allegations to create a plausible inference that Arlington County has a policy or custom of violating the civil rights of minorities through false arrests and malicious prosecutions. Accordingly, plaintiff's § 1983 claims against Arlington County and against the police officers in their official capacities must be dismissed with prejudice.

The first case cited in the amended complaint, *Zemedagegehu v. Arthur*, No. 1:15-cv-57, alleged violations of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 against the Arlington County Sheriff, the Virginia Department of Corrections, the Virginia Department of Corrections Director, the Virginia Board of Corrections, and a member of the Virginia Board of Corrections.[13] The complaint in *Zemedagegehu* alleged that the defendants in that case failed to provide Zemedagegehu with qualified American Sign

---

*Arthur*, No. 1:15-cv-57; *Vasquez v. Bombard*, No. 1:08-cv-843; *Heffernan v. Arlington County*, No. 1:11-cv-1354; *Touati v. Maloney*, No. 1:17-cv-247.

[13] The complaint was originally filed against the Arlington County Board, the Arlington County Sheriff's Office, and the Arlington County Detention Facility. *See Zemedagegehu v. Arthur*, No. 1:15-cv-57, Dkt. 1, at ¶¶ 1, 5-7. An amended complaint terminated the action against the original defendants and instead sued the defendants named above. *See id.*, Dkt. 21; Dkt. 24.

Language interpreter services and other auxiliary aids and services necessary to ensure effective communication during Zemedagegehu's six-week-long detention at the Arlington County Detention Facility after Zemedagegehu was arrested for attempting to sleep at Ronald Reagan Washington National Airport.[14] The Virginia Department of Corrections, the Virginia Department of Corrections Director, the Virginia Board of Corrections, and the member of the Virginia Board of Corrections were all dismissed with prejudice on a threshold Rule 12 motion.[15] Later, the plaintiff in *Zemedagegehu* dismissed the action against the Arlington County Sheriff pursuant to Rule 41(a)(1)(A)(ii) after having reached a mutually agreeable settlement.[16]

Clearly, the factual allegations in *Zemedagegehu* are inapposite to the factual allegations in the amended complaint here. In *Zemedagegehu*, the dispute arose out of the defendants alleged failure to provide Zemedagegehu with reasonable accommodations during Zemedagegehu's incarceration at the Arlington County Detention Facility. Here, the dispute arises out of an alleged interaction between plaintiff and Arlington County police officers in a mall parking lot relating to the investigation of an alleged traffic infraction. Accordingly, *Zemedagegehu* does not provide any support for plaintiff's claim that his interaction with the Arlington County police on March 9, 2018 was part of Arlington County's policy or custom of violating the civil rights of minorities through false arrests and malicious prosecutions.

The second case cited in the amended complaint, *Vasquez v. Bombard*, No. 1:08-cv-843, alleged a violation of Vasquez's § 1983 rights against Arlington County, the Arlington County

---

[14] *Zemedagegehu v. Arthur*, No. 1:15-cv-57, Dkt. 21, at ¶¶ 1, 18-19.

[15] *See id.* at Dkt. 44; Dkt. 45.

[16] *See id.* at Dkt. 73.

Police Department, an Arlington County police officer, and a private citizen.[17] The complaint in *Vasquez* alleged that Vasquez was arrested and charged with assault by the Arlington County police, even though Vasquez was allegedly the victim of the assault, not the perpetrator.[18] In *Vasquez*, the plaintiff voluntarily dismissed the entire case without prejudice pursuant to Rule 41(a) prior to any ruling on Arlington County and Arlington County Police Department's pending motion to dismiss pursuant to Rule 12(b)(6).[19] Because *Vasquez* involved a violent assault and not the investigation of an alleged traffic infraction and because *Vasquez* was voluntarily dismissed prior to discovery or any court rulings, *Vasquez* provides no support for plaintiff's claim that his interaction with the Arlington County police on March 9, 2018 was part of Arlington County's policy or custom of violating the civil rights of minorities through false arrests and malicious prosecutions.

The third case cited in the amended complaint, *Heffernan v. Arlington County*, No. 1:11-cv-1354, alleged a claim of malicious prosecution against eight defendants.[20] The complaint in *Heffernan* was dismissed without prejudice for lack of jurisdiction,[21] and Heffernan never filed an amended complaint nor appealed the dismissal order. Moreover, it appears that the complaint in

---

[17] *Vasquez v. Bombard*, No. 1:08-cv-843, Dkt. 1.

[18] *See id.* at ¶¶ 1-5.

[19] *Vasquez v. Bombard*, No. 1:08-cv-843, Dkt. 6.

[20] *Heffernan v. Arlington County*, No. 1:11-cv-1354, Dkt. 1-1. The eight defendants were: (i) Arlington County; (ii) Marita Wilson, social worker in the Child and Family Services Division of the Arlington County Department of Human Services; (iii) Jason McCandless, Arlington County, Virginia Assistant County Attorney; (iv) Sherri Brothers, Foster Care Supervisor for the Child and Family Services Division of the Arlington County Department of Human Services; (v) Karen Grane, Arlington County, Virginia Juvenile and Domestic Relations Court-Appointed Guardian ad Litem; (vi) Colin Brown, principal of Mckinley Elementary School in Arlington, Virginia; (vii) Theophani K. Stamos, Commonwealth's Attorney for Arlington County, Virginia; and (viii) an "unknown" Assistant Commonwealth's Attorney. *See Heffernan v. Arlington County*, No. 1:11-cv-1354, Dkt. 25, at 2.

[21] *See Heffernan v. Arlington County*, No. 1:11-cv-1354, Dkt. 25, at 5-6.

*Heffernan* intended to allege malicious prosecution in relation to child care and foster abuse allegations. Accordingly, because the factual allegations in *Heffernan* bear no resemblance to the factual allegations at issue here and because the allegations in *Heffernan* were never litigated, *Heffernan* provides no support for plaintiff's claim that his interaction with the Arlington County police on March 9, 2018 was part of Arlington County's policy or custom of violating the civil rights of minorities through false arrests and malicious prosecutions.

The fourth and final case cited in the amended complaint is *Touati v. Maloney*, No. 1:17-cv-247. The complaint in *Touati* alleged false arrest and malicious prosecution against Arlington County Child Protective Services, Arlington County, an Arlington County Police Officer, and the Commonwealth of Virginia.[22] The factual allegations in *Touati* related to Touati's alleged abduction of a process server attempting to serve plaintiff with process related to Touati's ongoing divorce proceedings and the subsequent allegedly malicious prosecution of Touati for abduction.[23] The court dismissed *Touati* without prejudice pursuant to Rule 12(b)(6).[24] The plaintiff in *Touati* filed an amended complaint but never served it on the defendants in that case, and therefore the case was dismissed for failure to prosecute.[25] Here, again, the factual allegations in *Touati*, as they were in *Zemedagegehu*, *Vasquez*, and *Heffernan*, are inapposite to the factual allegations here because an arrest related to an allegation of the violent crime of abduction is categorically different from an allegation related to an alleged traffic infraction. Moreover, like the other cases cited by plaintiff in the amended complaint here, *Touati* was never litigated on the merits. Accordingly,

---

[22] *Touati v. Maloney*, No. 1:17-cv-247, Dkt. 1.

[23] *Id.* at ¶¶ 25-32.

[24] *Touati v. Maloney*, No. 1:17-cv-247, Dkt. 9.

[25] *Touati v. Maloney*, No. 1:17-cv-247, Dkt. 11.

*Touati* does not provide support for plaintiff's allegation that his interaction with the Arlington County police on March 9, 2018 was part of Arlington County's policy or custom of violating the civil rights of minorities through false arrests and malicious prosecutions.

In sum, the cases cited by plaintiff in the amended complaint provide no plausible factual basis to support that plaintiff's interaction with the Arlington County police on March 9, 2018 was part of Arlington County's alleged policy or custom of violating the civil rights of minorities through false arrests and malicious prosecutions. Accordingly, plaintiff's § 1983 claims against Arlington County and against the police officers in their official capacities must be dismissed with prejudice.

## VI.

Next, it is appropriate to consider plaintiff's § 1983 claims against defendants Kang, Mindell, Butzer, and Buchofer in their individual capacities. Because the amended complaint lacks a sufficient factual basis to infer a plausible § 1983 claim against defendants Kang, Mindell, Butzer, and Buchofer, the individual capacity claims against those defendants must be dismissed.

The amended complaint merely alleges that defendants Kang, Mindell, Butzer, and Buchofer "interrogated" plaintiff after defendant Buxton had handcuffed plaintiff.[26] It is well-settled that suits against officials in their individual capacity cannot succeed absent proof of some degree of personal involvement in the alleged deprivation of rights. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Vinnedge v. Gibbs*, 550 F.2d 926, 928–29 (4th Cir. 1977). Here, the conclusory assertion that defendants Kang, Mindell, Butzer, and Buchofer "interrogated" plaintiff while he was handcuffed fails to provide a plausible basis that those defendants were involved in the alleged deprivation of plaintiff's rights. The amended complaint alleges constitutional

---

[26] Amended Complaint, Dkt. 25, at ¶ 32.

violations stemming from the decision to place plaintiff in handcuffs and from the decision to issue plaintiff a summons for reckless driving. Defendants Kang, Mindell, Butzer, and Buchofer are not alleged to have been personally involved in either of those decisions. Accordingly, the § 1983 claims against defendants Kang, Mindell, Butzer, and Buchofer must be dismissed.

## VII.

Next, it is appropriate to consider the amended complaint's § 1983 claims against defendant Buxton for (1) malicious prosecution and for (2) false arrest and torture, in violation of plaintiff's Fourth Amendment rights.

## A.

Defendants seek dismissal of plaintiff's § 1983 claim for malicious prosecution on the ground that this claim fails to allege facts that plausibly support a claim for malicious prosecution. In this regard, the Fourth Circuit has explained that a "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000). To state a malicious prosecution claim under § 1983, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).

Here, it is undisputed that the criminal proceedings were terminated in plaintiff's favor because plaintiff was found not guilty after a bench trial.[27] Moreover, the amended complaint alleges that defendant Buxton caused plaintiff's seizure by placing plaintiff in handcuffs, telling

---

[27] *See* Amended Complaint, Dkt. 25, at ¶ 56 ("Plaintiff secured a favorable termination via an acquittal."); Summons, Dkt. 27-1 (plaintiff was tried and found not guilty).

plaintiff that he was under arrest, and issuing plaintiff the summons for reckless driving.[28] Thus, the amended complaint plausibly pleads the first and third elements of a § 1983 malicious prosecution claim, and defendants challenge only the second element, namely that the seizure of plaintiff pursuant to legal process was unsupported by probable cause.

In this respect, defendants argue that releasing plaintiff on a summons is not a "seizure" within the meaning of the Fourth Amendment. But the only Fourth Circuit case cited by defendants specifically declined to address that issue. *See Burrell v. Virginia*, 395 F.3d 508, 514 n.6 (4th Cir. 2005) ("Whether a summons constitutes a seizure for Fourth Amendment purposes is not clear."). Defendants therefore rely on two district court decisions to support the proposition that a summons in lieu of an arrest is not a seizure within the meaning of the Fourth Amendment. *See Myers v. Shaver*, 245 F. Supp. 2d. 805, 812 (W.D. Va. 2003); *Guerriero v. Mayo*, No. 2:15-cv-385, Dkt. 23 at 10-11 (E.D. Va. Sept. 1, 2016).[29] But those cases are inapposite to the situation alleged in the amended complaint here because the plaintiffs in those cases were never detained nor placed in handcuffs.

In stark contrast to the district court decisions cited by defendants, the amended complaint here alleges that plaintiff was in handcuffs for approximately forty minutes before defendant Buxton released him with a summons for reckless driving. The test applied to determine whether a person has been seized for purposes of the Fourth Amendment is whether, under the totality of

---

[28] *See* Amended Complaint, Dkt. 25, at ¶¶ 24-26; Summons, Dkt. 27-1.

[29] Defendants also cite a case from the First Circuit for the proposition that the issuance of a summons is not a seizure under the Fourth Amendment. *See Britton v. Maloney*, 196 F.3d 24, 29 (1st Cir. 1999). *Britton* is clearly inapposite and unpersuasive because the plaintiff in *Britton* "merely received a summons in the mail. He was never arrested on the charges at issue. Nothing in the record indicates that he had to post a bond or to limit his travel before the ultimate hearing in which those charges were dismissed for want of prosecution." *Id.* In contrast, the amended complaint here alleges a categorically different situation, namely that plaintiff here was placed in handcuffs, told that he was under arrest, and held for approximately forty minutes in this condition before being issued a summons and released.

the circumstances surrounding the encounter, a reasonable person in the plaintiff's position "would have felt free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 438 (1991); *United States v. Lattimore*, 87 F.3d 647, 653 (4th Cir. 1996) (en banc). In this respect, the Fourth Circuit has made clear that a police officer's decision to handcuff someone, whether as part of an arrest or as part of an investigative detention, constitutes a seizure under the Fourth Amendment. *See Turmon v. Jordan*, 405 F.3d 202, 205 (4th Cir. 2005). Accordingly, based on the factual allegations in the amended complaint, plaintiff was seized under the Fourth Amendment when defendant Buxton placed plaintiff in handcuffs prior to writing him a summons for reckless driving.

To state a claim for § 1983 malicious prosecution, a plaintiff must plausibly allege not only that the plaintiff was seized within the meaning of the Fourth Amendment, but also that the seizure was pursuant to legal process unsupported by probable cause. *See Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). In this respect, the amended complaint alleges that there was no probable cause to handcuff plaintiff and to issue plaintiff a summons for reckless driving because the car accident between plaintiff and Anderson occurred on private property, namely within an apartment building complex. In response, defendants argue that defendant Buxton had reasonable suspicion to perform an investigatory stop of plaintiff for fleeing the scene of an accident based on Anderson's call to the police for service. Defendants further contend that the Virginia statute that prohibits fleeing the scene of an accident—Va. Code § 46.2-894—makes no distinction between an accident occurring on public or private property, and therefore that defendant Buxton had jurisdiction to perform an investigatory stop of plaintiff and write plaintiff a summons.

Defendants are correct that Va. Code § 46.2-894, which prohibits fleeing the scene of an accident, does not distinguish between an accident occurring on private or public property. In

contrast, however, the offense with which plaintiff was charged via summons, Va. Code § 46.2-852, only applies to "any person who drives a vehicle on any highway." Va. Code § 46.2-852.[30] And based on the allegations in the amended complaint, it is unclear whether the location of the car accident between plaintiff and Anderson qualifies as a "highway" as that term is defined by Virginia statute. *Compare Kay Mgmt. Co. v. Creason*, 220 Va. 820, 830-32 (1980) (holding that "the evidence of accessibility to the public for free and unrestricted use gave rise to a prima facie presumption that the streets of [the apartment complex] were highways within the definition of [the Virginia Code]."), *with Prillaman v. Commonwealth*, 199 Va. 401, 407-08 (1957) (holding that the parking lot of a gas station did not constitute a highway under the Virginia Code because public access was restricted to the private owner's invitation for private business purposes). Without further information about "the degree to which the [apartment complex road] is open to public use for vehicular traffic," it cannot be determined whether defendant Buxton had probable cause to issue plaintiff a summons for violating Va. Code § 46.2-852 based on the car accident between plaintiff and Anderson. *Furman v. Call*, 234 Va. 437, 439 (1987). Accordingly, on the current record, and viewing plaintiff's alleged facts in the light most favorable to plaintiff as required at this stage, it appears that plaintiff has adequately pled an actionable § 1983 malicious prosecution claim against defendant Buxton.

---

[30] The Virginia Code defines "highway" as "the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys, and, for law-enforcement purposes, (i) the entire width between the boundary lines of all private roads or private streets that have been specifically designated 'highways' by an ordinance adopted by the governing body of the county, city, or town in which such private roads or streets are located and (ii) the entire width between the boundary lines of every way or place used for purposes of vehicular travel on any property owned, leased, or controlled by the United States government and located in the Commonwealth." Va. Code § 46.2-100.

**B.**

Defendants also seek dismissal of plaintiff's § 1983 claim for false arrest and torture. Plaintiff's claim of false arrest and torture is more appropriately considered as two separate claims, namely (i) an unlawful seizure claim based on defendant Buxton's detention of plaintiff and (ii) a use of excessive force claim for putting plaintiff in handcuffs before asking him any questions. For the reasons that follow, defendants' motion to dismiss plaintiff's § 1983 claim against defendant Buxton is denied with respect to plaintiff's unlawful seizure claim and plaintiff's use of excessive force claim.

With respect to plaintiff's seizure by defendant Buxton, analysis begins with the two-prong test announced in *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). The Fourth Circuit applies the two-prong *Terry* test when analyzing the propriety of a traffic stop "[b]ecause an ordinary traffic stop is more analogous to an investigative detention than a custodial arrest." *United States v. Green*, 740 F.3d 275, 279 (4th Cir. 2014) (internal citations omitted). Although the March 9, 2018 incident alleged in the amended complaint is not an ordinary traffic stop because the police officers were responding to a call-for-service rather than pulling over a vehicle after witnessing a traffic infraction, the March 9, 2018 incident is nevertheless appropriately analyzed under the *Terry* framework because it is more analogous to an investigative detention than a custodial arrest. The *Terry* framework mandates a two-prong test, namely "(1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992) (quoting *Terry*, 392 U.S. at 20).

A traffic stop is reasonable at its inception if it is justified by probable cause or reasonable suspicion. *United States v. Johnson*, 734 F.3d 270, 274 (4th Cir. 2013). Here, according to the

amended complaint, defendant Buxton was responding to a call-for-service that informed the police that plaintiff was fleeing the scene of an accident. Virginia Code § 46.2-984 makes it unlawful to leave the scene of an accident in which an attended vehicle was damaged without providing certain information either to local law enforcement or to an occupant of the other vehicle. *See* Va. Code § 46.2-894. Thus, based solely on the allegations in the amended complaint, defendant Buxton at least had reasonable suspicion to detain plaintiff and to perform an investigatory stop based on Anderson's call-for-service. Accordingly, defendant Buxton's seizure of plaintiff was justified at its inception, and the first prong of *Terry* is satisfied.

With respect to *Terry*'s second-prong—the reasonableness of the scope and the duration of plaintiff's seizure, the current record, the amended complaint, discloses that defendant Buxton did not do anything unrelated to the investigation of the call-for-service that plaintiff had left the scene of an accident. During the alleged forty-minute period that plaintiff was detained, the amended complaint claims that plaintiff showed defendant Buxton and the other police officers the videos on his cell phone that plaintiff had taken of the accident and of Anderson refusing to provide plaintiff with his information. The amended complaint further alleges that defendant Buxton and the other police officers confirmed that plaintiff's phone number had in fact called 911 to report the accident. There is no doubt that these inquiries took time and that these inquiries were appropriate, especially given plaintiff's allegation that Anderson falsely reported that plaintiff improperly left the scene of the accident. Thus, on this record, defendant Buxton's seizure of plaintiff was justified at its inception, and the scope and the duration of plaintiff's detention do not appear on the face of the current record to be excessive. But forty minutes is a significant period of time for an investigatory detention related to an alleged traffic infraction, and therefore it is plausible that a full record may demonstrate that the duration of plaintiff's detention was

unreasonable in this case. Accordingly, defendants' motion to dismiss plaintiff's § 1983 unlawful seizure claim against defendant Buxton must be denied.

Moreover, this does not end the analysis of plaintiff's unlawful seizure claim because even if defendant Buxton's seizure of plaintiff was justified at its inception and in its scope and duration, that does not mean that defendant Buxton's use of handcuffs to detain plaintiff was reasonable under the Fourth Amendment. In this respect, the amended complaint alleges that defendant Buxton immediately handcuffed plaintiff and told him that he was under arrest without asking plaintiff any questions. The amended complaint further alleges that plaintiff remained in handcuffs for forty minutes in the cold weather while defendant Buxton and the other police officers investigated plaintiff's alleged traffic infraction. Construed liberally, these factual allegations allege a § 1983 claim for use of excessive force in violation of plaintiff's Fourth Amendment rights.

In this respect, the Fourth Amendment prohibition against unreasonable seizures bars the use of excessive force on free citizens, whether it be "in the course of an arrest, investigatory stop, or other 'seizure.'" *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see Wilson v. Prince George's Cty.*, 893 F.3d 213, 219 (4th Cir. 2018). To determine whether an officer has used excessive force when seizing a free citizen, an "objective reasonableness" standard is applied. *E.W. by & through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018). In this respect, the Fourth Circuit has made clear that "[t]he question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001). This objective inquiry is based on the totality of the circumstances, "including three factors in particular: [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively

resisting arrest or attempting to evade arrest by flight." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (internal quotation marks omitted) (the "*Graham* factors").

Here, the parties dispute whether handcuffing plaintiff was justified under the circumstances. Importantly, the Fourth Circuit has made clear that it "has never held that using handcuffs is *per se* reasonable." *Dolgos*, 884 F.3d at 180 (holding that handcuffing a minor who was calm and complaint was a violation of minor's Fourth Amendment rights despite the police officer having probable cause to arrest the minor because the police officer "took a situation where there was no need for any physical force and used unreasonable force disproportionate to the circumstances presented").

With respect to the first *Graham* factor, the crime being investigated here, fleeing the scene of an accident with minor property damage, constitutes a Class 1 misdemeanor pursuant to Va. Code § 46.2-894. Although fleeing the scene of an accident is a serious crime, the amended complaint alleges that this accident was extremely minor. Accordingly, the first *Graham* factor weighs against plaintiff, but only very slightly, because fleeing the scene of an accident is a Class 1 misdemeanor. *See Dolgos*, 884 F.3d at 180 (finding that the first *Graham* factor weighs against plaintiff with respect to the crime of assault but that the "finding is tempered…by the fact that the offense is a misdemeanor").

With respect to the second *Graham* factor, there is no indication from the current record that plaintiff posed an immediate threat to the safety of the officers or others. The amended complaint alleges that plaintiff was carrying bags of food out of the mall when defendant Buxton told him to drop the bags of food and put him in handcuffs. On this record, there is no indication that plaintiff possessed any weapons, made any threats, or otherwise posed any immediate threat

to the police officers or others. Accordingly, on the current record, the second *Graham* factor weighs heavily in plaintiff's favor.

With respect to the third *Graham* factor, there is no indication from the current record that plaintiff was actively resisting arrest or attempting to evade arrest by flight. Although defendant Buxton was investigating a call-for-service that reported plaintiff was fleeing the scene of an accident, the totality of the circumstances in the current record do not indicate that plaintiff was resisting or evading arrest. The amended complaint alleges that the mall parking lot where defendant Buxton placed plaintiff in handcuffs was only a quarter-mile from the scene of the accident, that plaintiff's car was parked in the mall parking lot with its flashers on, and that plaintiff was exiting the mall carrying bags of food. On the current sparse record, consisting only of the amended complaint and the summons, the totality of the circumstances do not indicate that plaintiff was resisting arrest or attempting to evade arrest at the time that plaintiff was placed in handcuffs. Accordingly, on the current record, the third *Graham* factor weighs in plaintiff's favor.

In sum, based on the current record, which consists only of the amended complaint and the summons, and viewing the evidence in the light most favorable to plaintiff as is required at this stage of the litigation, plaintiff has pled a plausible § 1983 use of excessive force claim against defendant Buxton. A more informed analysis of defendant Buxton's decision to handcuff plaintiff immediately, and to keep plaintiff in handcuffs for forty minutes, must await development of a more complete record. Accordingly, defendants' motion to dismiss plaintiff's § 1983 use of excessive force claim against defendant Buxton must be denied.

## C.

Defendants also argue that even if plaintiff has alleged a plausible § 1983 malicious prosecution, unlawful seizure, or use of excessive force claim against defendant Buxton, defendant

Buxton is protected by qualified immunity. Qualified immunity operates to protect law enforcement and other government officials from civil damages liability for alleged constitutional violations stemming from their discretionary functions. *See Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). Thus, the violation of the constitutional right must be clearly established for the government official to be liable for civil damages. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). In this respect, the Supreme Court has made clear that the "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation he [or she] confronted." *Id.* at 202.

At this stage, the plausibility assessment of plaintiff's § 1983 malicious prosecution, unlawful seizure, and use of excessive force claims is limited to the well-pleaded facts in the amended complaint. Importantly, defendant Buxton and the other police officers' version of events are not part of the current record. In this case, a more informed analysis of defendant Buxton's entitlement to qualified immunity must await development of a more complete record and perhaps trial.

## VIII.

Finally, construed liberally, the amended complaint also alleges a § 1983 claim against Arlington County based on a violation of plaintiff's Fourteenth Amendment right to Equal Protection.[31] For the reasons that follow, the amended complaint provides a sufficient factual basis to state a plausible Fourteenth Amendment Equal Protection Clause claim against Arlington County.

---

[31] *See* Amended Complaint, Dkt. 25, at ¶ 52 ("The malicious prosecution claim of plaintiff is as a result of [defendants'] blatant violation of his 14th [A]mendment rights that…the equal protections of the law…were extended to Dylan Anderson but not [p]laintiff."); ¶ 69 (Defendants "did not offer plaintiff an equal protection of the law and afforded Dylan Anderson more protection and access because of his apparent race (Caucasian).").

The Supreme Court has recognized successful equal protection claims brought by a "class of one," "where the plaintiff alleges that [ ]he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In this respect, the amended complaint alleges that plaintiff called 911 to report the accident between plaintiff and Anderson and that plaintiff was told that the police would not respond because it was a minor accident. The amended complaint further alleges that Anderson then called 911 to report that plaintiff was fleeing the scene of an accident and that the police did respond to Anderson's call for service. On this record, plaintiff and Anderson were similarly situated in that they both called 911 to report issues involving a traffic accident and they both requested service from the police.

Defendants argue, however, that there was a rational basis for the difference in treatment between plaintiff's call and Anderson's call. Specifically, defendants argue that there is a rational basis to respond differently to a call-for-service related to fleeing the scene of an accident and a call-for-service related to the report of a minor car accident. On a more developed record, it may be true that there was a rational basis for the difference in treatment between plaintiff's call and Anderson's call. But based solely on the factual allegations in the amended complaint, assumed as true at this stage of the litigation, and viewing the alleged facts in the light most favorable to plaintiff as is required at this stage, plaintiff has pled a plausible § 1983 Equal Protection claim against Arlington County. Accordingly, defendants' motion to dismiss plaintiff's § 1983 Equal Protection claim against Arlington County must be denied.

*     *     *

For the reasons set forth above, defendants' motion to dismiss the amended complaint is granted in part and denied in part. Specifically, defendants' motion to dismiss is granted with respect to the following claims:

26

(i) plaintiff's § 1983 claims that allege violations of plaintiff's Fifth, Eighth, and Fourteenth Amendment Due Process rights against all defendants are dismissed with prejudice;

(ii) plaintiff's § 1983 claims that allege violations of plaintiff's Fourth Amendment rights against Arlington County and the five police officer defendants in their official capacities are dismissed with prejudice; and

(iii) plaintiff's § 1983 claims that allege violations of plaintiff's Fourth Amendment rights against defendants Kang, Mindell, Butzer, and Buchofer in their individual capacities are dismissed without prejudice.

Accordingly, plaintiff's surviving claims are:

(i) a § 1983 malicious prosecution claim against defendant Buxton in her individual capacity;

(ii) a § 1983 unlawful seizure claim against defendant Buxton in her individual capacity;

(iii) a § 1983 use of excessive force claim against defendant Buxton in her individual capacity;[32] and

(iv) a § 1983 Equal Protection claim against Arlington County related to the difference in treatment between plaintiff's call-for-service and Anderson's call-for-service.

An appropriate order will issue separately.

The Clerk is directed to send a copy of this Opinion to plaintiff and to all counsel of record.


Alexandria, Virginia
June 5, 2020

/s/
T. S. Ellis, III
United States District Judge

---

[32] Plaintiff's use of the term "torture" to characterize defendant Buxton's treatment of plaintiff—namely, that defendant Buxton handcuffed plaintiff and left plaintiff on the sidewalk—plausibly alleges an excessive use of force claim. The use of the evocative term "torture" does not add anything to the analysis of plaintiff's use of excessive force claim and therefore is not used in discussion of that claim.